WALHIER v. WEBER.

CONTRACTS—ILLEGALITY—RIGHT TO RECOVER PAYMENTS.
    An agreement by which plaintiff agreed to pay defendants $10 a week for the use of a liquor license issued to another person for another location, and for defendants' services in obtaining immunity from police interference, being illegal (§§ 5382-5384, 2 Comp. Laws), plaintiff cannot recover payments made pursuant thereto.

Error to Saginaw; Gage, J. Submitted December 8, 1905. (Docket No. 171.) Decided December 15, 1905.

Assumpsit by John Walhier against William F. Weber and Emma Kahn, copartners as the National Brewing

Company, for money had and received. There was judgment for plaintiff, and defendants bring error. Reversed.

*Frank E. Emerick*, for appellants.

*Eugene Wilber* and *Fred L. Eaton*, for appellee.

MOORE, C. J. The following statement of facts is taken from the brief of counsel for the appellee:

"On the trial of this cause the plaintiff stated his case in substance as follows: The plaintiff, about July 1, 1904, agreed with the defendants that he would open a saloon in the city of Saginaw for the sale of intoxicating liquors and lager beer, and pay the government tax, and give the bond required by the State law for selling liquor at retail, and also purchase his beer of defendants, who were brewers. In addition to paying for the beer, the plaintiff was to advance the sum of $10 or more each week to the defendants, until sufficient was paid to cover said State tax from July 1, 1904, to May 1, 1905; the defendants agreeing to advance the money for the tax, and obtain a receipt or card for the use of plaintiff in his saloon. The plaintiff purchased his beer of the defendants, and paid the $10 and more every week until the first of January, 1905, the sum then amounting to $172, when the defendants refused to pay said tax, and obtain for plaintiff the said card. Plaintiff then closed his saloon and demanded the return of the $172 so advanced without consideration, and upon their refusing to pay commenced this suit. The defendants admitted the payment of the money, but claimed it was paid for the use of a card or receipt issued some time before to one Cushman for a number and street different from that occupied by the plaintiff. They claimed that they had advanced $500 to one Cushman for his State tax, but after the license had been obtained and delivered to Cushman, and he had run his saloon for a short time, he ran away, leaving the card in his saloon. The defendants took possession of the card, and retained it until the commencement of this suit. They also claimed they were to obtain protection for the plaintiff from the police and prosecuting attorney, so as to enable him to carry on his business without paying the State tax, and in violation of the law. They made no claim that they ever did obtain such immunity or that this Cushman card or license was ever in the possession of the plaintiff. After the defend-

ants had made this claim in open court, the plaintiff, to shorten the trial, consented that if the court should find under the law that the defendants were entitled to make such a defense their claim might be treated as the true one, but subject to the plaintiff's objection. This was agreed to by the defendants. Thereupon the court, upon hearing the argument of counsel, directed the jury to render verdict in favor of the plaintiff for the said sum of $172."

It is the claim of plaintiff that "the action is not brought to enforce an illegal contract, but in disaffirmance of it, while the defendants seek to make the alleged illegal contract the basis of his defense."

In a written opinion filed in the case the trial court among other things said:

"It is conceded on both sides that the general rule is that the courts will not aid either party to an illegal agreement by enforcing the same. There are certain exceptions, however, to the rule. One of these is where the party plaintiff can exhibit his case without relying upon illegal transactions. 9 Cyc. p. 550.

"This the plaintiff is able to do in this case, unless the defendants can be permitted to set up their version showing the illegality of the contract. Defendants could not have sued the plaintiff on this contract to compel him to carry it out. Why then should they be permitted to use it as a defense? As we understand the cases in this State, they hold that they cannot do so. 'The [illegal] contract as such can neither be set up as the basis of an action, nor as a ground of defense.' *Tucker* v. *Mowrey*, 12 Mich. 379; *Brazee* v. *Bryant*, 50 Mich. 140. It is a familiar rule of law also that no one should be heard to allege his own turpitude as a matter of defense. The rule above quoted from the Michigan cases is not applied when action is brought to enforce an illegal contract. As in one brought to collect a note or to enforce a mortgage given upon an illegal consideration, or where the transaction was otherwise unlawful. There are many cases in this State holding that in the latter class of cases the illegality of a contract may be set up in defense. The case at bar, however, is not brought to enforce a contract, but is an action for money had and received, brought after the rescission of the illegal contract."

It is insisted the trial court was right in the views we have quoted, and in the further view expressed by him that the case presented is an executory contract. It is said by counsel that "money paid on an illegal contract which remains executory can be recovered back in an action founded on a disaffirmance and on the ground that it is void"—citing *Wassermann* v. *Sloss*, 117 Cal. 425 (38 L. R. A. 176), and many other cases. For the purposes of this case under the stipulation made in open court we must take the version given by the defendant of the transaction to be true. If this is done, it then appears that an illegal agreement was made (see sections 5382–5384, 2 Comp. Laws), that plaintiff entered upon its performance, and for more than six months, in pursuance of said illegal agreement, conducted the business of a saloon keeper in violation of law, and as part of the illegal agreement, while he was so violating the law, made payments which he now seeks to recover.

The principle involved has been before this court repeatedly, and it has been uniformly held that where money has been paid or goods delivered in pursuance of a contract that is immoral or criminal, or in violation of a statutory provision, and the parties are in pari delicto and particeps criminis, the court will leave them where they have placed themselves. See *Bronson Agricultural & Breeders' Ass'n* v. *Ramsdell*, 24 Mich. 441; *Webber* v. *Donnelly*, 33 Mich. 471; *Raymond* v. *Leavitt*, 46 Mich. 447; *Doran* v. *Phillips*, 47 Mich. 228; *Richardson* v. *Buhl*, 77 Mich. 661 (6 L. R. A. 457); *Niagara Falls Brewing Co.* v. *Wall*, 98 Mich. 158; *Gambs* v. *Sutherland's Estate,* 101 Mich. 355; *Hatch* v. *Reid,* 112 Mich. 433; *Koppitz-Melchers Brewing Co.* v. *Behm*, 130 Mich. 649; *Detroit Salt Co.* v. *National Salt Co.*, 134 Mich. 103.

Judgment is reversed, and new trial ordered.

McALVAY, GRANT, BLAIR, and HOOKER, JJ., concurred.