**WATERWORKS INDUSTRIES, INC.,**
Appellant (Defendant),

v.

**APLEX INDUSTRIES, INC.,**
Appellee (Plaintiff).

**No. 90–132.**

Supreme Court of Wyoming.

Dec. 17, 1990.

Rehearing Denied Jan. 5, 1991.

James R. McCarty, Casper, for appellant.

Richard H. Peek, Casper, for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

GOLDEN, Justice.

This appeal arises from a Wyoming action to enforce a Texas default judgment under the Enforcement of Foreign Judgments Act. W.S. 1–17–703 (June 1988 Repl.). The main question of law we address is whether a Texas court lacked jurisdiction to enter a default judgment under Texas law.

## ISSUES

Appellant Waterworks Industries, Inc. (Waterworks), a Wyoming corporation, asks:

#### A.

Whether the Texas court lacked jurisdiction to enter a default judgment in the absence of proof in the record of completion of service upon Waterworks by the Texas Secretary of State.

#### B.

Whether the trial court erred in considering the materials submitted after the court had taken the Waterworks' motion under advisement.

#### C.

Whether Aplex is barred from proceeding to enforce the Texas judgment in Wyoming since it has not obtained a certificate of authority from the Wyoming Secretary of State.

Appellee Aplex Industries, Inc. (Aplex), a Texas corporation, asks:

1. Did the trial court commit error in considering the affidavits filed on behalf of Appellee on March 28, 1990, in response to the affidavits filed on behalf of Appellant on March 27, 1990?

2. If there was error, did the Appellant waive said error?

3. Was the Texas court presented with proper proof of service of process before it entered a default judgment against Appellant?

4. Did the trial court commit error in finding that Appellee was within the exception of Section 17–16–1501(b), of the Wyoming statutes, and was not required to obtain a certificate of authority from the Wyoming Secretary of State before proceeding to collect the judgment?

We agree with the trial court's determination that the party filing the enforcement action qualified under a statutory exception to the certificate of authority requirement. We disagree, however, with the trial court's decision, based on a late-filed affi-davit, that the Texas court had jurisdiction in the underlying Texas action. Therefore, we reverse the judgment below.

## FACTS

Aplex obtained a default judgment against Waterworks in a Texas county court on September 18, 1987. A copy of the judgment was filed with the clerk of court of the Seventh Judicial District in Wyoming on February 20, 1990; the appropriate affidavit filed by Aplex's Wyoming counsel accompanied the filing. W.S. 1–17–704 (June 1988 Repl.). Following the foreign judgment filing, Waterworks moved for relief from that judgment on the ground, among others, that the Texas county court had lacked jurisdiction over Waterworks to enter that judgment. W.S. 1–17–703; and W.R.C.P. 55(c) and 60(b). Hearing was set for March 28, 1990.

On March 22, 1990, Waterworks, relying on its president's affidavit, filed a motion to dismiss or stay the proceedings, asserting that Aplex was barred from maintaining the enforcement action because it did not possess a certificate of authority to do business in the state as required by W.S. 17–16–1502 (Dec.1989 Repl.). The next day, Waterworks filed a notice of a certificate of the Wyoming Secretary of State evidencing that Aplex had not been issued a certificate of authority to do business in Wyoming. On March 26, 1990, Aplex filed its traverse to Waterworks' motion for relief. The traverse was supported by several affidavits, one of which had been executed by Aplex's Texas counsel in the Texas county court action in which the default judgment had been entered. Although Texas counsel recited in that affidavit certain matters pertaining to the service of process on Waterworks in that action, the affidavit contained no proof that the Texas Secretary of State had sent a copy of the process to Waterworks. *See* Tex.Civ.Prac. & Rem.Code Ann. § 17.045 (Vernon 1986). Nor was there any evidence the Texas county court judge had that proof before him when he entered default judgment against Waterworks. Aplex's salesman also executed an affidavit attached to

Aplex's traverse which stated that the salesman's activity in Wyoming for Aplex consisted of contacting potential customers, taking a customer's order and transmitting that order to Aplex's home office in Texas. Aplex directly shipped its product to the ordering customer from the Texas office.

On March 27, 1990, Waterworks filed its legal memorandum on the issues of the allegedly void Texas default judgment and Aplex's lack of a certificate of authority to do business in the State of Wyoming. The same day Waterworks filed an affidavit executed by its Wyoming counsel which included the complete Texas county court record of the Texas action. That record did not contain proof that the Texas Secretary of State had sent a copy of the process in that action to Waterworks as required by Texas law, nor did it show that the county court judge had that proof before him when he entered the default judgment against Waterworks.

The parties appeared before the trial court at a hearing on March 28, 1990, to consider Waterworks' motions. The record in the hearing does not show that Aplex moved for a continuance to meet Waterworks' evidence that the Texas county court lacked jurisdiction over Waterworks when the default judgment was entered. Also, the record does not show that Aplex objected to the trial court's receiving that evidence.

Several hours after the hearing concluded Aplex filed a motion to file another affidavit executed by its Texas counsel. Attached to that affidavit was a copy of a purported certification signed on August 17, 1987, by the Texas Secretary of State which recited that the Secretary of State sent process in the Texas action to Waterworks on August 10, 1987, and received the return receipt bearing the signature of Waterworks' agent on August 13, 1987. In his affidavit, Texas counsel stated that on September 10, 1987, when he obtained the default judgment, he had presented the court with a copy of the Texas Secretary of State's certification and that the county

court judge signed the entry of default judgment only after Texas counsel had provided that certification.

So far as we can tell from the record and the briefs, Aplex did not request a setting on its post-hearing motion, and the court did not hold a hearing on that motion. On April 4, 1990, the court filed its decision letter; on April 26, 1990, the court entered its order which incorporated by reference the earlier decision letter and which enforced the Texas judgment. This appeal followed.

## DISCUSSION

■ Waterworks claimed that Aplex was prohibited by Wyoming law from initiating and maintaining its foreign judgment enforcement action. W.S. 17–16–1502 requires a foreign corporation transacting business in this state to obtain a certificate of authority before maintaining a court proceeding in this state. As mentioned earlier, Aplex presented the affidavit of its Wyoming salesman which recited the salesman's activities in Wyoming. Relying on that affidavit, Aplex contended that its sales activity did not constitute "transacting business" as set forth in W.S. 17–16–1501(b) (Dec.1989 Repl.). The trial court agreed, and we agree. Specifically, W.S. 17–16–1501(b)(vi) provides that a foreign corporation, like Aplex, need not obtain a certificate of authority if it solicits or obtains orders which require acceptance outside this state before they become contracts. W.S. 17–16–1501(b)(xi) provides that a foreign corporation like Aplex need not obtain a certificate of authority if it transacts business in interstate commerce. Accordingly, the trial court was correct in its ruling allowing Aplex to initiate and maintain its enforcement action.

■ The trial court, however, incorrectly relied on Aplex's late-filed affidavit of Texas counsel to hold that the Texas county court had jurisdiction over Waterworks when it entered default judgment in September, 1987.[1] It is clear that at the time

---

1. Here, counsel faced an evidentiary problem at      the beginning of the trial, but failed to apprise

of the March 28 hearing on Aplex's enforcement action, the Texas county court record contained neither evidence that the Texas Secretary of State had sent a copy of process to Waterworks nor proof that the Texas county court judge had that evidence before him when he entered default judgment. Such proof is required under Texas law. Tex.Civ.Prac. & Rem.Code Ann. § 17.045 (Vernon 1986). *See also Verges v. Lomas & Nettleton Financial Corporation,* 642 S.W.2d 820, 821, 822 (Tex.App. 1982); *Prine v. American Hydrocarbons, Inc.,* 519 S.W.2d 520, 522 (Tex.App.1975); *Whitney v. L & L Realty Corporation,* 500 S.W.2d 94, 95–96 (Tex.1973).

Aplex's late-filed affidavit did not and could not cure the fatal deficiency of the Texas county court record. Aplex did not request a hearing on its motion to supplement the record, nor did the court hold such a hearing. Therefore, the trial court could not properly consider the untimely affidavit. The Texas county court did not have jurisdiction to enter the default judgment, and we will not enforce a judgment entered where no jurisdiction exists. The judgment of the trial court is reversed.

URBIGKIT, C.J., filed a specially concurring opinion.

URBIGKIT, Chief Justice, specially concurring.

I concur in the decision, the reasoning used and authority cited in substantiation on the issue of the invalidity of the Texas judgment. There is cause to be troubled, however, with the unnecessary and, I believe, erroneous conclusion in the first paragraph of the discussion relating to the non-domestication of a foreign corporation transacting business in the state in contravention of Wyo.Const. art. 10 § 5 and W.S. 17–16–1501 and specifically W.S. 17–16–

1502(a). "A foreign corporation may not transact business in this state until it obtains a certificate of authority from the secretary of state." W.S. 17–16–1501(a). "A foreign corporation transacting business in this state without a certificate of authority may not maintain a proceeding in any court in this state until it obtains a certificate of authority." W.S. 17–16–1502(a).

At issue is the concept of whether the exception of W.S. 17–16–1501(b) *existent in conjunction* with additional activities may be construed as "transacting business" for purposes of access to the Wyoming judicial system as plaintiff.[1]

The majority determines that the exceptions of W.S. 17–16–1501(b)(vi), solicitation of orders with acceptance outside of the state before they become contracts, and W.S. 17–16–1501(b)(xi), transacting business in interstate commerce, dispositively cover the subject. In consideration, I question the pursuit of this subject for resolution in its status as dictum, assess an insufficient record for a proper decision and finally conclude that only a part of the controlling concept is properly stated.

The record of this minimally developed factual appeal affords little finite information about the scope of activities of the foreign corporation. For this reason, I do not think we can properly address this subject in any opinion until facts are developed at retrial should a continued pursuit of the complaint be pursued in Wyoming without prior qualification to do business.

We are informed by affidavit that Aplex Industries, Inc., as plaintiff in trial court and appellee here, is a non-qualified Texas corporation. It is stated without dispute by appellant:

2. That Aplex Industries is a Texas corporation which does business in the

---

the court and opposing counsel and did not request a continuance. Counsel also failed to request a hearing setting on his post-trial motion, perhaps relying on a benevolent court. Consequently, favorable court action on the late-filed post-trial motions resulted in an appearance of unfairness. This is something that could be avoided by more vigilance on the part of counsel.

1. W.S. 17–16–1502(e) determines that access to the courts for defense is not invoked by the constitutional or statutory prohibitions of the two previous subsections. *Willis v. Asbury Transportation Co.,* 386 P.2d 934 (Wyo.1963).

State of Wyoming and has a Casper telephone number and address listed in the Casper telephone directory as APLEX Industries, 1009 Cardiff, Casper, Wyoming 82609, 234–9337. A copy of said listing is attached as Exhibit "A".

3. That Aplex Industries, Inc. has not qualified to do business in the State of Wyoming and does not have a certificate of authority to conduct business in the State of Wyoming. * * *

4. That Aplex Industries, Inc. has had a sales office and a full-time salesman located in the State of Wyoming since October, 1986. [This would be nearly four years, since the affidavit was signed March 22, 1990.]

Aplex Industries, Inc., as a foreign corporation, responded to justify non-domestication under Wyoming law and constitution:

4. Affiant [the president of appellee] was actively involved in setting up Defendant's account with Aplex, and Aplex had been selling merchandise to the above-named Defendant on account for approximately two years prior to the problem arising between the parties over this particular transaction.

5. Prior to filing suit in the State of Texas, Aplex offered to take back the merchandise sold to Waterworks Industries, Inc., and to credit the Defendant's account with Aplex in the appropriate amount. Waterworks Industries, Inc. failed to return any portion of the inventory pursuant to that understanding.

6. After Aplex filed suit against Waterworks Industries, Inc. on the overdue account prior to judgment being entered against Waterworks Industries, Inc., Aplex again agreed to take the inventory back and credit Defendant's account with Aplex Industries, Inc. Waterworks Industries, Inc. never returned any portion of the inventory to Aplex.

And further, the Casper, Wyoming employee of Aplex Industries, Inc. stated:

3. Affiant handles the sales for Aplex Industries, Inc. in the State of Wyoming, and other states within this region.

4. Affiant contacts potential customers that might be interested in purchasing products manufactured by Aplex Industries, Inc., which products are manufactured in the State of Texas.

5. If the customer purchased products, affiant take[s] the order on behalf of Aplex Industries, Inc. and transmits the order to the home office of Aplex Industries, Inc. in the State of Texas.

6. For almost all orders placed, in Wyoming and the surrounding region, with Aplex Industries, Inc., Aplex Industries, Inc. ships the manufactured goods directly to the customer in interstate commerce.

7. These are the basic activities performed by Aplex Industries, Inc., or its authorized agent in the State of Wyoming [noted in prior paragraphs as a resident of Natrona County, Wyoming and the employee of Aplex Industries, Inc.], and the basic business transaction is in the form of the interstate commerce as reflected heretofore.

That is the state of facts presented about the nature of business conducted in Wyoming by the undomesticated foreign corporation. The substantive fact of interstate commerce is not questioned. However, to complete the test, we have to specifically analyze internal activities within the state to determine the requirement to domesticate. There is a line of departure between uncontrolled interstate commerce and activities within the state. Otherwise, no out-of-state merchandising corporation, including General Motors or General Electric, would ever have to qualify. *See Ford Motor Co. v. Arguello*, 382 P.2d 886 (Wyo. 1963).

The proposition that some interstate commerce activities and other activities which are in intrastate will not necessarily deny state regulation has been dispositively determined by the United States Supreme Court in *Eli Lilly and Company v. Sav-On-Drugs, Inc.*, 366 U.S. 276, 279, 81 S.Ct. 1316, 1318–19, 6 L.Ed.2d 288, *reh'g denied* 366 U.S. 978, 81 S.Ct. 1913, 6 L.Ed.2d 1268 (1961) (footnote omitted):

[I]f Lilly is engaged in intrastate as well as interstate aspects of the New Jersey drug business, the State can require it to get a certificate of authority to do business. In such a situation, Lilly could not escape state regulation merely because it is also engaged in interstate commerce. We must then look to the record to determine whether Lilly is engaged in intrastate commerce in New Jersey.

The United States Supreme Court then found that the diverse and variant activities of the drug manufacturer constituted doing business in New Jersey.

It is black-letter law that doing business for application of long-arm statutes is a subject entirely different in concept and content from doing business within the court access provisions of individual state statutes and constitutions. No one would question but that for this case, the Texas corporation was doing business to a degree which meets the constitutional test of *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and the provisions of W.S. 5–1–107.[2] *See Eddy v. Oukrop*, 784 P.2d 610 (Wyo.1989); *Nutri–West v. Gibson*, 764 P.2d 693 (Wyo.1988); and Comment, *The "Long–Arm" Statute: Wyoming Expands Jurisdiction of the State Courts Over Non–Residents*, IV Land & Water L.Rev. 235 (1969).

The subject presented here is whether the more stringently emplaced criteria of court non-access is demonstrated in order to provide the prohibitive defense of non-qualification as a result of the state constitution and statutory provisions.

Beyond that, this majority, in what essentially is dictum discussion, seems to assume that the transaction of interstate business under the exceptions of W.S. 17–16–1501(b) necessarily excludes the effect of subsection (a) of the same statute even if more functions exist than just the interstate transaction and possible acceptance of orders in the home state. To complete the analysis for requirement to domesticate, we must also apply this factual situation including a domiciled office and at least one in-state employee providing residential staffing. Precedent was not found in briefing and none was cited by the majority that home-office acceptance of an order in itself is ultimately dispositive in every transaction. That is apparently what is suggested "if it solicits or obtains orders which require acceptance outside this state before they become contracts" as a provision of subsection (b) of the statute. A lot of things can occur within the state, including delivery, installation, maintenance, collection or actual fabrication. Clearly, general law provides the principle that the status for required domestication is determined as a factual decision based on all circumstances.

The basic Wyoming law, first addressed and defined in constitutional convention, *see Annals of the Wyoming Constitution* at 613–16, was dispositively applied in *Gould L. & C. Co. v. Tel. Co.*, 17 Wyo. 507, 101 P. 939 (1909).[3] This court has never (before now), except as the specific statute was confined to acting as a plaintiff, limited or withdrawn the principles considered in *Gould L. & C. Co.* In *Gould L. & C. Co.*, a Nebraska livestock firm, undomesticated in Wyoming but engaged in carrying on a general Wyoming livestock business, sued the telephone company for damages resulting from transmission of an improper cattle shipping instruction from Rawlins, Wyoming to Idaho Falls, Idaho. This court held that the failure of the plaintiff to qualify as a foreign corporation under Wyo.Const. art. 10, § 5 (the general predecessor of W.S. 17–16–1501 and 17–16–1502), disqualified its usage of the Wyoming

---

2. W.S. 5–1–107 states:

    (a) A Wyoming court may exercise jurisdiction on any basis not inconsistent with the Wyoming or United States constitution.

    (b) When the exercise of personal jurisdiction is authorized by this section, service may be made outside this state and proved according to the Wyoming Rules of Civil Procedure or any order of the court.

3. The rule of *Gould L. & C. Co.* has been obviously limited to proceeding as a plaintiff and access to the court, since subsequent changes in Wyoming statute removed other questions of the validity of the contract and right to defend.

courts for damage recovery. Appellee cites in contravention of *Gould L. & C. Co., True v. Hi–Plains Elevator Machinery, Inc.*, 577 P.2d 991 (Wyo.1978) and *Creamery Package Mfg. Co. v. Cheyenne Ice Cream Co.*, 55 Wyo. 277, 100 P.2d 116 (1940), neither of which provide dispositive authority on the specific issue in legal or factual content presented by this case. In *True,* the foreign undomesticated corporation had neither an office nor inventory in Wyoming, which facts were deemed significant in that opinion. See likewise the basic case of *Allenberg Cotton Co., Inc. v. Pittman,* 419 U.S. 20, 95 S.Ct. 260, 42 L.Ed.2d 195 (1974). The second case, *Creamery Package Mfg. Co.*, cited by appellee is also factually inapplicable. The transaction involved in that case related to a contract by the Denver, Colorado branch office to sell and install, in an isolated transaction, refrigeration equipment and further, to remodel a room for business operation of the creamery. The buyer neglected to pay the entire purchase and construction costs provided by contract and the out-of-state concern sued in state court. The non-domestication defense was raised, seller dismissed, then domesticated and refiled the suit. The defense was again raised and sustained in trial court from which appeal was taken.

In *Creamery Package Mfg. Co.*, this court noted the subsequent qualification but did not determine the case on that issue. It reversed as to the sale cost of the equipment and the installation charges as interstate in nature and remanded for a factual determination of the construction activity to be assessed whether it was "a relevant and appropriate part of the sale." *Id.* 100 P.2d at 123. The creamery had no office or employees in Wyoming and the transaction was isolated in business operation. *Cf. Interstate Const. Co. v. Lakeview Canal Co.*, 31 Wyo. 191, 224 P. 850 (1924), which was differentiated by this court in *Creamery Package Mfg. Co.* The *Interstate Const. Co.* case provides little substance to present review since the legislature clearly eliminated the contract invalidating premise now found in W.S. 17–16–1502(e), "does not impair the validity of its corporate acts or prevent it from defending any proceeding in this state." *See Louis Ilfeld Co. v. Union Pac. R. Co.*, 23 F.2d 65 (8th Cir.1927), *cert. denied* 276 U.S. 635, 48 S.Ct. 420, 72 L.Ed. 743 (1928).

The final case on the subject but not cited by anyone is *Booth v. Magee Carpet Co.*, 548 P.2d 1252 (Wyo.1976). The broad language in *Booth* must not be confused by its facts and issue which involved a judgment entered by default for a contract balance due on an interstate order of carpeting. The real issue presented was the long-arm jurisdiction which was found to exist for the state of business conducted within Wyoming.

The case law which brings the subject of non-domestication disqualification for forum court access is extended. 36 Am. Jur.2d *Foreign Corporations* § 324 (1968). Considering the nature of this record and the scope of case law, as well as the apparent present rule that domestication can occur before dismissal, any effort that I might further pursue to separately weigh out the relevant factors for required qualifications becomes an academic exercise. Clearly implanted in the scope of total activities test are questions such as local office, resident personnel, general and continued course of business as well as interstate nature of the transaction, site of delivery and where authority for acceptance may exist. The point to be made is that all of the factors must be considered by the trial court and, conceptually, both the trial court and the majority of this court are in error in failing to recognize the broad analysis which is required to make the decision. There is a line of demarcation in national precedent and under the factual circumstances presented by this record. It is improvident to attempt to reach a dispository conclusion which, within the opinion, is in effect only dictum. See, for example, *General Ry. Signal Co. v. Com. of Virginia ex rel. State Corporation Commission*, 246 U.S. 500, 38 S.Ct. 360, 62 L.Ed. 854 (1918); *Winston Corp. v. Park Elec. Co.*, 126 Ga.App. 489, 191 S.E.2d 340 (1972); *Von Arx, A.G. v. Breitenstein*, 52 A.D.2d 1049, 384 N.Y.S.2d 895 (1976), *aff'd* 41

N.Y.2d 958, 394 N.Y.S.2d 876, 363 N.E.2d 582 (1977); and 36 Am.Jur.2d, *supra*, § 317.